Good morning, Your Honors. My name is Scott Meehan, attorney for appellate at The Global Asylum, Inc. May it please the Court, I'd like to reserve five minutes for rebuttal. The preliminary injunction in this case prevents my client from any use of the term Hobbit or Hobbits in its packaging or promotional materials for its film, Age of the Hobbits. Now the DVD packaging is found at Excerpts of Record 38. And the term Hobbits is found at three locations on that packaging. One, in the tagline immediately below the title. Two, on the back cover, which has two summary paragraphs. And three, in the title itself. Now first, the tagline immediately below the title states, They're not Tolkien's Hobbits, they're real. Nominative fair use allows one to use another's trademark for purposes of advertising. And it states clearly, Tolkien's Hobbits. This is a clear comparison and point of reference to the studio's product, Tolkien's Fantasy Characters. Could you deal with the title, which I think is the most difficult one from your perspective? Tell me why the title isn't. Let's assume I agree with you that the taglines, had there been a different title, had the title been The Little People of South America or something else, and then you had under it, They're not Tolkien's Hobbits, and those sort of disclaimers, I'd have an easier time with this case. But deal with the title. The title's the toughest. I'll acknowledge that. And the reason that I began to go down the path of, you've got this reference to Tolkien's Hobbits on the front cover. You've got another reference to Tolkien's Hobbits on the summary on the back. And those together bring you to the inevitable conclusion that there's an intent to refer to the plaintiff's product, Tolkien's Hobbit characters, in the title. In fact, it's explained as such in the packaging materials themselves. Well, the title, though, is, what is the name of it? The Age of the Hobbits. The Hobbits? Isn't that, how is that nominative? You see, if you've got two descriptions that says, by the way, this is not about the Hobbits, and then you have a title that says Age of the Hobbits, how do those two disclaimers save your title? Or put it differently, absent the disclaimers, don't you agree that your title is not nominative?  So even absent the disclaimers, you think the title is fine? Yes, because the title Hobbits takes its name from the comparison to Tolkien's fantasy characters. If you look at the, there are several scientific articles that are part of the record, from Discover magazine, from Nature magazine, from National Geographic and the Smithsonian. All of those articles have Hobbits in the title. All of those articles are about homo floresiensis. And all of those articles contain an explanation of why, of the connection between Tolkien's Hobbits and the name of their creature. My client- Are you saying Hobbit lost, are you saying that the trademark lost its authority, something like thermos? No, no, no, that's not the argument I'm making. So you're saying somebody else is infringing and that's okay, so we can do it? No, no, no, no. What I'm trying to say is, no one would accuse those scientific articles of infringing on the trademark issue because they're using a nominative fair use. They're using Tolkien as a point of reference- Could you turn that off? Turn it on or take it outside. As I was saying, no one would accuse any of those organizations of infringing on the trademark title. But as a factual matter, it is the exact same use as my client. That is, you've got Hobbits in the title, you've got the explanation of what their connection to homo floresiensis, and an article that is about the human subspecies homo floresiensis. My understanding, your argument is that this use, this nominative use here is really a dual reference. Exactly. Right? And that's the point- But that's not the way I understand our case law. It's not the way I understand new kids. Well, as pointed out in Cairns v. Franklin Mint, what happens in a nominative fair use case is that the defendant will use the plaintiff's product as a point of reference to ultimately describe his own product. So the fact is they reference both products. That's nominative fair use and that's the typical use of nominative fair use, that they reference both articles. Now, in our case, Hobbits refers to plaintiff's Hobbit character, and it also refers to our character. Now, the district court, in its ruling, applied what I believe is to be an incorrect test. That is, since our use referred to our character, therefore the inquiry ends there. But that's not where the inquiry ends, as clearly stated in Cairns v. Franklin Mint. In every nominative fair use, you use the trademark term to refer to the plaintiff's product, but your ultimate goal is to reference your own product. So it's a reference to both. Now, wouldn't that be an extension of our case law? If we were to adopt your position, wouldn't we be extending the whole notion of a nominative fair use? No. I believe that it's perfectly consistent with the existing law on nominative fair use. Now, this is more like an indirect nominative fair use. In the Ninth Circuit? Which Ninth Circuit case is the best one that says you can use it your way to just refer to yourself? Cairns v. Franklin Mint. Now, the district court's ruling in this case is that the nominative fair use defense of new kids does not apply because there is no evidence that asylum intended to refer to plaintiff's product, Tolkien's fantasy Hobbit characters, close quote. Now, I've already described what I believe the court's test applied was and how it is inconsistent. But I, you know, when I read the record, it looked to me like you initially suggested to the district court that you weren't intending to apply, you weren't intending to refer to the plaintiff's product. In a poor choice of language in my opposition brief to the TRO, I was making a traditional fair use argument, okay? And what I was trying to say was that the title characters in our film are not Hobbit's characters, are not Tolkien's characters. And that's a true statement. Now, the studios and the court have not been able to let that statement go to understand what its true meaning was. Well, we were just trying to understand your argument. But that was at the TRO stage. It changed. The argument changed. The argument changed in the preliminary injunction. The factual assertions did not change, but the argument changed. We went to a nominative. You might lose if you maintain that argument. Absolutely. Yeah. So the argument is that it's a nominative fair use. Now, the reason that I believe that the court used the failed to use the Cairns test as articulated is because it says there's no evidence that the asylum intended to refer to Tolkien's Hobbits. In essence, in saying that the packaging doesn't have the terms Tolkien's Hobbits on it, which is absolutely incorrect. Therefore, the only way to take the court's ruling out of the illogical, implausible, and incorrect realm is to have it apply a test that I've described, which is the all or nothing test. That is, if there's a reference to your own product, you take yourself out of the nominative fair use test. But it seems to me you then are relying on the disclaimers. In other words, I still have the difficulty here. What you're saying is if you take the packaging as a whole, it's clear that this is not referring to Tolkien's Hobbits. Is that the argument you made to the district judge? No, I think I made the opposite argument unless I misunderstood your question. Well, I'm sorry that your movie is not about Tolkien's Hobbits. I understand that the disclaimer in itself is a comparison to Tolkien's Hobbits. On the back cover, it explains why it has the title. Yeah, and I guess I'm still I'm asking the question I asked at the beginning and trying to understand your position. Let's assume neither disclaimer on the front or the back, just the title. There's no explanation on the back? No explanation, no disclaimer. Your position is it's still nominative. It's still nominative, but it would probably require a remand to make it clear to the public what the nominative fair use is. And in other words, a Tobari type Toyota versus Tobari type remand with instructions to bring it completely in. Because clearly the Hobbits in our film are not Tolkien's Hobbits. They're the Indonesian species that were discovered in the jungles of Indonesia. And you couldn't and you couldn't readily identify them without using the word Hobbit, correct? Correct. That's your point. That's my point. You couldn't do it without using Hobbit. That is my point. I will get to what it's a little different with Diana's likeness. It'd be very difficult to do Diana without using her likeness. Correct. It doesn't just offhand resonate that one could not make this this movie you made without using the word Hobbit. He just couldn't. They just couldn't do that in any sense. It could be called well, you couldn't couldn't identify it without using that word. That's your point. No, no, no. That's number one, isn't it? Okay. We could have used any number of titles, but the nominative fair use test, as pointed out in Toyota Motor Sales versus Tobari, does not require one to explore alternative titles first. In fact, it says we've never held to that to that structure. And in fact, they pointed out in Toyota Motor Sales versus Tobari, they could have used that's a little different, is it not? No, I don't think so. They're selling. They're selling car X. Wasn't that it? They were selling car X. And it's only a part that's selling car X. And maybe how in the world can we tell people we're selling car X unless we mention X? That that's kind of a not a bad argument. How in the world can you tell people that you're making this fantasy movie of yours without using the word Hobbit? How could how could we do that? Yeah. How could you? How could you not make this movie of yours without using the word Hobbit? You've got a fantasy movie of little characters running around and you think it wasn't exactly a scientific documentary. Absolutely not. It's a fantasy kind of thing. Oh, it's a documentary of little little people running around someplace or other. Yes. Running around. And you think there's just no way of describing those people. Logically, unless I use the word Hobbit. That's your point, right? I had to use the word Hobbit to do that. Had I to make him couldn't readily identify these people without using the word Hobbit. Is that correct? No, that's that's not correct. That's not that's not the point. But whether or not it's the test, you agree that you could look at whether or not it's the test. You agree this movie could have been made and the people could have identified with terms other than Hobbit. Absolutely. In fact, every book or every movie ever written could have been used, could have used a different title. But that is not that's not the test. As is again, as is pointed out to Barry, it is good enough that that the that the defendant chose to use that term and correctly use that term. That that is enough. We've there's never been an alternative alternative avenues type test. Is this how how does reality play into the district judge's analysis of this? And we've been talking about technical tests, but if you look at this record as a whole, I think the district judge was entitled to conclude that this was an attempt to to piggyback onto a an existing mark and an existing movie that was coming out. I don't think there's any denial of that. No, that's absolutely the case. So how does that play into the judge's determination of granting a preliminary injunction? Does it does it should it not play into it? Let me read a quote to answer your question from the accident. Your answer is it shouldn't go ahead and read it. It shouldn't. And here's the here's the thing. Every plaintiff that attacks a defendant's nominative fair use is going to say, hey, they're they're riding our coattails. That's that's the argument that every plaintiff makes against a nominative fair use defendant. And I'll read what what what the New Kids Court says. Whereas here the use does not imply sponsorship or endorsement, the fact that it is carried on for profit and in competition with the trademark holder's business is beside the point. I'd like to reserve the remainder of time. Now, you're almost you're through, but you run down, you ran down all your time. All right. Thank you. Through only in a time using sense. Yes. Good morning, Your Honors. May it please the Court. Andrew Thomas from Jenner and Block on behalf of the plaintiffs and appellees. In this matter, Warner Brothers, New Line, MGM and the Salsance Company. Your Honor, I would like to take a step back. The only issue on this appeal is the nominative fair use doctrine. I think it's important to keep in mind. He didn't appeal any of their aspects. He doesn't challenge on appeal any of their aspects. None of the district court's ruling, the test for preliminary, the other parts of the preliminary injunction test. That's correct. They don't he doesn't challenge any aspects of the preliminary injunction standard. Any aspects of the court's finding of likelihood of confusion under the sleek craft factors. Any of the court's factual findings about the defendant's intent to deceive consumers and so forth. Or any of the other issues or other defenses that were raised at one point or another. So would that be enough to grant an injunction even if these uses were nominative? Your Honor, the nominative fair use defense substitutes for the likelihood of confusion standard. Here, the. So isn't that the only issue in front of us? It's the only issue in front of you is nominative fair use. So let me let me ask you the question because we cut off your opponent when he began. Let's assume a different title. I forget the Latin term here because I'll get it wrong, but it's the age of the Latin term, homo, whatever it is. And then the disclaimer and the description were there. Would those be OK? Floresiensis, because it's the island of Flores is where they found the fossil. I spent years memorizing the Latin here, and I spent a day trying to master it. It seems that way, Your Honor. If they had a completely different title, then there would be no reason for them to be making these Hobbit remarks. OK. Whether there was any reason or not, would that be a violation? Your Honor, I think it depends on the context, and you can't step back from the reality. The reason I'm asking is the injunction here seems quite broad, and it would prevent what I call the disclaimers and your client calls a disclaimer and an explanation, or your opponent calls a disclaimer and an explanation. Why should those be prevented if the title were different? Your Honor, going to the injunction, I think the district court tried very hard to craft a narrow injunction that pertained to this particular film. So it's not an injunction that prohibits them from saying, from making a reference to Tolkien's Hobbits in connection with some other film, some documentary, some other film. No, this film. Let's assume that they wander off beaten in this case, and they change the name of the movie to the age of the short people. And then they have on it, these are not Tolkien's Hobbits, and an explanation on the back that some scientists have called them that, but they're really a different thing. Should those two references be enjoined? Your Honor, if all along it had been a completely different title. No, no, I know, but you can't change my hypothetical on me. We've got an injunction out there, and they're now trying to comply with it. They say, okay, we need to change the title of this movie, and they do to something unobjectionable. Are they still enjoined from using those two disclaimers, as I call them?  Because in the context of this particular movie, the way it has been advertised before the injunction, the way it had been promoted, the way that Asylum had used artwork in promoting the movie that was very evocative of the way Lord of the Rings had been promoted, the way they had used descriptions that invoked the Lord of the Rings and the Hobbit movies describing peace-loving Hobbits and a quest and a dragon, all of which are plot points from the Hobbit movie. Your position is those two disclaimer and explanation taken solely by themselves are not nominative? In the context of this film, which is what the injunction pertains to, I don't think there's a use of those that would satisfy the nominative fair use test. Your Honor, they may be nominative in the sense that they are talking about the Tolkien Hobbits and not something else. So they may pass the threshold requirement for nominative fair uses, which you're actually identifying or talking about the trademarked product, but they would not satisfy the three elements of the nominative fair use test, the second of which is that you're using no more of the mark than would be necessary. You're not using an excessive amount of the trademark. And here, there would be no reason to use it at all. Indeed, the so-called disclaimer was language that they didn't add until after they had gotten a cease and desist letter, which was about the title. So if they're calling it something else, age of the tree people or something like that, there's there's no need for them to be using the trademark in anywhere on the packaging. So any use is more than is necessary. Let me ask you, let me ask you if I understand you. If they had started off at the very beginning with age of the tree people. OK. And they have this little short person shown on the front of the street, three people, person. And they put the disclaimer, assuming for the moment, mentioning this isn't about Hobbits. What are assuming that they've been OK from the very beginning, if they were just independent operand, that's what they did. Are you saying that because we know from this record that they were up to big naughty, the injunction can reach a little further than if they had started off nice and clean? Are you saying that? And if so, is there any authority? Well, Your Honor, what I'm saying is that in order for the court to go through and parse the injunction and parse the statements on the packaging to determine whether they're nominative fair uses or not, the court would need to look at whether the nominative fair use test is satisfied as to those statements. I believe that if this were a completely different movie from the beginning and had not been added, and this is not so much about their intent or their state of mind or their naughtiness, it's about the way the movie was being presented to the public up until now, or up until the date of the injunction, that it was presented to the public as a vehicle for consumer confusion. That's why they made this movie. They wanted to come out with a movie that had Hobbit in the title at the same time, within three days of the theatrical release of my client's motion picture. And then they came up with this pretense that we'll make it about these Indonesian pre-hominids, and then that way we'll have a sort of clever reason that we used Hobbit and maybe we'll be able to get away with it. Is there any title that included the word Hobbits that would be nominative about this film? About this film, no, Your Honor. I think you need to look at the content of the film. Make it a bad title, because I'm not in the movie business, but some scientists call them Hobbits, but they're not. Would that be okay? I don't think, it wouldn't be nominative, Your Honor, because there's nothing about this film that refers to or comments on the Warner Brothers movie or any trademark product. It's not a documentary, it's not a parody, it's not commenting on the trademark good in any way. It's doing precisely what Judge Kaczynski said in the New Kids case, you're not supposed to be able to do,  appropriate the cachet of the trademark in order to attract attention to yourself and confuse consumers. Let me, can I ask you, in the district court, was there any discussion about the actual terms of the preliminary injunction, the scope of the preliminary injunction? Your Honor, there was very limited discussion in the district court. Global Asylum made the Tabari argument at one point, and the district court addressed it in a footnote in the preliminary injunction order, saying, no, this is not a case where we need to go through that because it's not a nominative fair use to begin with. There was not an argument in the district court by asylum about these other references. Yes, I was just going to ask, was there a specific reference by asylum to these subtitles that Judge Hurwitz is referring to? I don't believe there was, Your Honor, that there was any attempt at that point to try to craft an injunction around these other uses. The entire litigation in the trial court was about the title. Well, that's what I assumed, and I guess my question is, is that if you got that victory here, hypothetically, does the subtitles matter? Your Honor, in the context of this movie, I think the district court certainly did not abuse its discretion in saying that using the word hobbit, any use of the word hobbit in connection with this movie on the packaging is not fair under the standard. And this is probably not a commercially realistic question, but if your opponents wanted to remarket their movie tomorrow, they've made it. It's in the it's in on the it's in the can, so to speak, and they wanted to call it something different. Are you saying that they couldn't then say, by the way, since we've been sued, we want to make this clear. This is not about Tolkien's Hobbits, because that would seem to violate the terms of the district court order. Your Honor, I think in connection, our point is that in connection with this particular movie. But same movie, same movie, new title. And the court, I think the district court is, such abuse might be nominative, I would agree with that, but it would not satisfy all three elements of the test. The third of which, which I didn't get to before, is that it's not used in a confusing, in a manner that suggests endorsement or sponsorship. And that's, I think, the problem with the quote from counsel from New Kids on the Block. This is a situation, as abundantly demonstrated by the by the record in the trial court and the trial court's lengthy findings. These are very long T.R.O. and P.I. orders that we got from Judge Gutierrez, that in fact, that's exactly what Asylum was doing here, which was trying to suggest affiliation or endorsement or sponsorship or trying to confuse people that what they were putting out into the market somehow was the Hobbit movie that had been so massively advertised and promoted in the press. In fact, they've admitted multiple times in the district court and in the court of appeals here that their purpose was to take advantage of the widespread public interest in what they call All Things Hobbit in December of 2012, generated because of the massive marketing and promotion by writing the way they're using piggybacking, riding the coattails, free riding. Exactly. Mr. Meehan said that in response to that question by Judge Fernandez, that his best case was Karnes, the Princess Diana case. What's your response to that? I think that's a great case for us, Your Honor. I think all of the nominative fair use cases that Asylum has talked about, all of them involve a situation where the defendant, in the first instance, is referring to a trademark product or image, even though ultimately they may be describing their own product. That's the New Kids case. It's their own poll. It's Tabari, where someone wants to say in a straightforward way, we're a broker of Lexus automobiles. It's Karnes. They use Princess Diana's image on their Diana-related memorabilia that the Franklin Mint was selling. It's the Volkswagen case that's discussed in New Kids, where someone who runs a Volkswagen repair business wants to be able to say, I repair Volkswagens. So the initial reference is to the trademark good or service. That's the entire purpose of the nominative fair use doctrine, is to allow people to talk about, identify trademark products without having to go through some kind of verbal gymnastics by saying, I'm talking about one of the big automakers in Detroit, but it's not Ford. It's so that you can say General Motors. So if this had been a documentary about scientists who discovered these people and many scientists called them hobbits, would that be okay? If that were the subject matter of the movie? Your Honor, I think that would, depending on the manner in which it was packaged and used, it might well be fine. It would not be nominative. It might be permissible under the First Amendment or some other theory if they weren't packaging it in some confusing way to tie it into the movie. But part of your case depends on your argument is that the movie itself really isn't about the hobbits. I think there's three reasons why the court was correct in finding that the nominative fair use is not satisfied and that this is not a nominative use to begin with. One of which is the content of the movie itself, which doesn't use the word hobbit anywhere in it, not in the dialogue, not in the voiceover, not in any kind of onscreen text. The second reason that the court was correct in making that factual finding is that it was admitted multiple times by asylum that they were not referring to the trademarked product. It wasn't just a poor choice of language in the TRO opposition. It was there. It was in three sworn declarations by Paul Bales, who's an owner of their company, and it's on page 16 of their opening brief on appeal. They say over and over again that they're not talking about the Tolkien hobbits. And I think the district court was certainly justified in taking them at their word. And so I think for all of those reasons, it was the factual finding by the district court that this film of asylums was not making a reference to the trademarked product is not clearly erroneous. In fact, it's the only finding that made any sense or that could be made based on that record. What's the status of the proceedings in the district court? They're proceeding, and we're in discovery now. Are they marketing the film under a different name? They have, I believe they have been marketing the film under a title called, depending on which market, in some markets they've called it Clash of the Empires. At other times, they were unfortunately using another title that I think is unnecessarily confusing, Lord of the Elves. Is that the subject of continuing litigation? It may be at some point. Unless you have other questions, I'll submit. Thank you. Thank you, counsel. Thanks. We appreciate all your arguments on this matter. It's interesting. We're familiar. Thank you very much. The matter is submitted at this time, and that ends our session for today.
judges: Fernandez, Paez, Hurwitz